UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TYNDLE RIDGE DEVELOPMENT, LLC, *et al.*, | : : : | Case No. 09-cv-169 |
| | : | Magistrate Judge Timothy S. Black |
| Plaintiffs, | : : | |
| vs. | : : | **MEMORANDUM OPINION AND ORDER GRANTING** |
| CITY OF CINCINNATI, *et al.*, | : : : | **DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | : | |

This civil action is before the Court on Defendants' motion to dismiss (Doc. 7) and Plaintiffs' memorandum in opposition (Doc. 10). The parties have consented to final adjudication by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 13). For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss.

## I. BACKGROUND FACTS

This case arises out of Cincinnati police officers involvement in investigating Plaintiffs' liquor serving establishment, Perkins Lounge. Plaintiffs Tyndle Ridge Development, LLC (which owns and operates Perkins Lounge), Theotis Holmes (managing member and president of Tyndle Ridge), and Joseph Riley (manager of Perkins Lounge) (collectively "Plaintiffs") allege several violations by Defendants the City of Cincinnati, Cincinnati Police Chief Thomas Streicher, and John Doe Cincinnati police officers (collectively "Defendants").[1]

---

[1] Plaintiffs also named the State of Ohio, *ex rel.*, Attorney General Nancy Rogers in the complaint. (Doc. 1 at ¶ 7). However, on April 30, 2009, Plaintiffs voluntarily dismissed the State of Ohio. (Doc. 14).

Plaintiffs claim that Defendants violated their Fourth Amendment rights by: (1) unlawfully entering Perkins Lounge on three separate occasions (Doc. 1 at ¶¶ 15-29); and (2) lingering around Perkins Lounge for unreasonable amounts of time after conducting police runs, which discouraged patrons from entering Perkins Lounge and resulted in lost income. (*Id*. at ¶¶ 30-32). Plaintiffs appear to be bringing this action as a "Bivens Claim"[2] and pursuant to 42 U.S.C. §1983. (*Id*. at ¶¶ 33-37).

## II. STANDARD OF REVIEW

The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). To that end, for purposes of a motion to dismiss under Rule 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

---

[2] In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court ruled that an implied cause of action existed for an individual whose Fourth Amendment freedom from unreasonable search and seizures had been violated by federal agents. The Supreme Court held that the victim of such a deprivation can sue for the violation of the Amendment itself, despite the lack of any federal statute authorizing such a suit. (*Id*.)

enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-557 (2007) (internal citations omitted).

Thus, the test for dismissal under Rule 12(b)(6) is a stringent one, and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996).

### III. ANALYSIS

#### A. Fourth Amendment Claims

The "chief evil" that the Fourth Amendment protects against is the "physical entry of the home." *Payton v. New York*, 445 U.S. 573, 585 (1980). The Fourth Amendment requires that searches be reasonable. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990). This reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a premises. *Payton*, 445 U.S. at 585-86. However, there are circumstances when a warrant is not required. Administrative searches are included among these exceptions to the warrant requirement. *Stone v. Stow*, 64 Ohio St.3d 156, 164-165 (1992).

In assessing what constitutes a reasonable search under the Fourth Amendment,

courts consider a plaintiff's reasonable expectation of privacy in the premises searched. The reasonable expectation of privacy in a liquor permit premises is minimal because permit holders, regardless of permit class, consent to inspection of the premises by authorized agents through the provisions of the Liquor Control Act and accompanying administrative rules and regulations.[3] *Solomon v. Liquor Control Comm'n*, 4 Ohio St.2d 31, 36 (1965).

Plaintiffs assert three separate Fourth Amendment violations (Counts I-III), claiming that officers unlawfully entered Perkins Lounge on January 14, 2009, January 20, 2009, and February 7, 2009, allegedly without reasonable suspicion of a liquor control or a lawful warrant. (Doc. 1 at ¶¶ 9, 12, 13).

Plaintiffs claim that on January 14 and 20, 2009, Defendant police officers entered Perkins Lounge for a liquor inspection and conducted a full search of the business premises. (Doc. 1 at ¶¶ 9-10, 12). Plaintiffs further claim that on February 7, 2009, Defendant police officers entered Perkins Lounge with assault rifles and indicated that "someone reported a gun in the establishment." (Doc. 1 at ¶ 13). Moreover, Plaintiffs allege that on February 7, 2009, the officers conducted a full search of the premises, despite the fact that the establishment was closed at the time the police entered. (*Id.*)

---

[3] "Certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise. Liquor and firearms are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation." *Marshall v. Barlow's Inc.*, 436 U.S. 307, 313 (1978).

Ohio Adm. Code 4301:1-1-79 provides for warrantless administrative searches and states as follows:

> "Warrantless administrative inspections may be conducted by authorized agents or employees of the Division of Liquor Control and the Department of Public Safety or <u>Peace Officers</u> as defined in §2935.01 of the Revised Code subject to the following limitations as to time, place and scope: (A) Said inspections shall be <u>conducted for the limited purpose of determining compliance with the provisions of the liquor control act and the rules of the liquor control commission</u>. (B) Such inspections may be <u>conducted only during those hours in which the permit holder is open for business</u> and only by authorized agents of the department or by any peace officer . . . <u>Inspections may be conducted at other times only if it reasonably appears that all or part of the permit premises is in operation</u>. (C) Said inspections shall be conducted on that portion of the premises that is included as part of the licensed premises . . . (D) This provision for warrantless administrative inspections, includes but is not limited to the search and seizure of materials in locked closets, filing cabinets, cellars, attics, storage rooms, desks, and safes located on the license premises, so long as there is reasonable suspicion that evidence of violation of the liquor control act or the rules of the liquor control commission will be found therein. Such material shall include books, records, wherever they may be found on the premises. Nothing in this rule shall be construed to contravene the plain view doctrine."

(Emphasis added).

Plaintiffs allege that the Defendant police officers needed to have a reasonable suspicion that a liquor violation had in fact occurred before they searched the premises. (Doc. 1 at ¶¶ 16, 21, 26). However, an observant reading of Ohio Adm. Code 4301:1-1-

79(D) reveals a more tapered precept: there must be a reasonable suspicion that evidence of a violation will be found therein prior to "search and seizure of materials in locked closets, filing cabinets, cellars, attics, storage rooms, desks . . . safes [and the like.]" The provision further explains that "nothing in this rule shall be construed to contravene the plain view doctrine." (*Id.*) As the Supreme Court of Ohio explained in *AL Post 763 v. Ohio Liquor Control Comm'n,* 82 Ohio St.3d 108, 112 (1998): "[t]he administrative rule does not require agents to possess a reasonable suspicion of a violation in order to enter liquor permit premises and conduct routine inspections, pursuant to Ohio Adm. Code 4301:1-1-79(A)-(C)." (Emphasis supplied).

Plaintiffs do not allege that the Defendant police officers conducted anything other than routine liquor inspections and/or warrantless administrative inspections on January 14 and 20, 2009. Therefore, Plaintiffs have failed to state causes of action for Fourth Amendment violations with respect to the events of on January 14 and 20, 2009.[4]

---

[4] The complaint does state that the Defendant officers' actions "were undertaken to further harass the plaintiffs, their employees, patrons, and patrons coming to the business. Said actions were further undertaken to promote and to further the issues relating to the action filed by the State of Ohio against the plaintiffs in the Hamilton County Common Pleas Court." (Doc. 1 at ¶¶ 18, 22, 28); (*see also* the memo *contra*, Doc. 13 at 3: "defendants were obviously entering the premises for other reasons than liquor problems"). Although these allegations imply retaliation, Plaintiffs do not state such a claim, nor do they explain the relevancy of the state court action. Additionally, although the complaint alleges that the actions taken by Defendants were not replicated against "similarly situated Caucasian businesses with Caucasian customers" (*see* Doc. 1 at ¶ 23), Plaintiffs fail to state a claim for discrimination based on race, for to assert race discrimination under Section 1983, plaintiffs must allege, among other things, that they are members of a protected class, *see Wright v. Murray Guard, Inc*., 455 F.3d 702, 707 (6th Cir. 2006), a claim which is not stated anywhere in the complaint here. S*ee Twombly*, 550 U.S. at 553-557 (a plaintiff is obligated to state the grounds for his entitlement to relief).

Accordingly, Counts I and II of Plaintiffs' complaint shall be **DISMISSED** for failure to state a claim.

The facts of the February 7, 2009 incident are somewhat different. Unlike the January incidents, Plaintiffs do not allege that the Defendant police officers entered the premises to conduct a liquor inspection. Instead, Plaintiffs allege that the police officers entered armed with assault rifles and indicated that they were there because "someone reported a gun in the establishment." (Doc. 1 at ¶ 13). While Plaintiffs claim that the Defendant police officers could not enter Perkins Lounge pursuant to Ohio Liquor Control Section 4301: 1-1-79,[5] they fail to allege what constitutional right the police officers violated by entering Perkins Lounge to investigate a gun complaint that night.[6]

Plaintiffs fail to allege a constitutional violation, and, therefore, Count III of Plaintiffs' complaint shall be **DISMISSED** for failure to state a claim.

### B.     Lingering Police Officers

Plaintiffs also claim that they are entitled to relief because Defendant police officers lingered in or around Perkins Lounge after completing "runs and investigations

---

[5] Plaintiffs allege that the Defendant police officers' entry on February 7, 2009 was in violation of Ohio Liquor Control Section 4301: 1-1-79 because the Perkins Lounge was closed when the officers entered, and liquor inspections are only permitted when the establishment is open for business. (Doc. 1 at ¶ 26). However, Plaintiffs do not allege that the Defendant officers were conducting a liquor inspection on February 7, 2009.

[6] According to the Sixth Circuit, exigent circumstances justify a warrantless entry within four general categories: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; and (4) a risk of danger to the police or others. *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). Even considering the complaint in the light most favorable to Plaintiffs and accepting the facts alleged as true, the February 7, 2009 search was justified under the exigent circumstances exception.

. . . necessary, proper and needed for public safety" and that the police presence "discouraged patrons from entering Perkins Lounge." (Doc. 1 at ¶ 32). However, nowhere in the complaint do Plaintiffs allege how this conduct is unconstitutional or in violation of their civil rights.

Therefore, Count IV of Plaintiffs' complaint shall be **DISMISSED** for failure to state a claim.[7]

### 1. John Doe Cincinnati Police Officers

Even if Plaintiffs did state a cause of action, they had the further burden to allege a basis upon which the John Doe Cincinnati police officers were not shielded from liability under the doctrine of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Smoak v. Hall,* 460 F.3d 768, 778 (6th Cir. 2006).

The Supreme Court has developed a two-part test to determine whether a defendant is entitled to qualified immunity. *Saucier,* 533 U.S. at 201; *see also*, *Poe v. Haydon,* 853 F.2d 418, 423 (6th Cir. 1988). First, a court must determine if the facts taken in the light most favorable to the injured party show that the defendants conduct violated a constitutional right. *Id.* Second, if the court finds that such a violation has occurred, the court must determine if the right was "clearly established." *Id.; see also, Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir. 1987). Where the right involved is clearly established, it can be inferred that the conduct is objectively unreasonable. *Caudill v. Hollan*, 431 F.3d 900, 911 n. 10 (6th Cir. 2005).

---

[7] Counts V and VI of Plaintiffs' complaint are based upon the allegations in Counts I-IV. Therefore, Counts V and VI are also hereby **DISMISSED** for failure to state a claim upon which relief can be granted.

### a. Constitutional violations

As discussed in Section III(A) and (B), Plaintiffs fail to allege any constitutional violations. Accordingly, Defendant police officers are shielded from liability under the doctrine of qualified immunity.

### b. Rights not clearly established

Before liability can be imposed on Defendant police officers, they must have been on fair notice that their actions could lead to liability. Here, there are no facts in the complaint to suggest that Defendant police officers had reason to believe that their conduct violated the Constitution or Plaintiffs' civil rights.

Since Plaintiffs fail to allege constitutional violations or clearly established rights, Defendant police officers are entitled to qualified immunity.

### 2. City of Cincinnati

As discussed in Section III(A) and (B), Defendant police officers did not deprive Plaintiffs of any constitutionally protected rights. Because the police officers did not violate Plaintiffs' constitutionally protected rights, the City of Cincinnati cannot be liable under 42 U.S.C. §1983. *Harbin v. City of Detroit*, 147 Fed.Appx. 566, 569 (6th Cir. 2005). The City does not have *respondeat superior* liability for claims brought pursuant to 42 U.S.C. § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Furthermore, Plaintiffs do not allege that the City of Cincinnati had an unconstitutional policy or custom that proximately caused a constitutional injury. Therefore, the City of Cincinnati must be dismissed. *Bd. of Cty. Comm. of Bryan County, Oklahoma v. Brown*,

520 U.S. 397, 405-407 (1997)

### 3. Police Chief Streicher

Chief Streicher is the Police Chief of the City of Cincinnati Police Department. The complaint does not indicate whether Chief Streicher is sued in his individual or official capacities. Absent clear indication that a public official is being sued in his individual capacity, the Court must assume he is being sued in his official capacity. *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991).

An official capacity suit directed against a public official is analogous to a claim against the public entity. *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, the claim against Chief Streicher must be evaluated as a claim against the City of Cincinnati itself. Here, the complaint fails to state a federal claim against the City of Cincinnati. The City does not have *respondeat superior* liability for claims brought pursuant to 42 U.S.C. § 1983. *Monell*, 436 U.S. at 691. Therefore, the claims against Chief Streicher must be dismissed.

Even if Plaintiffs had sued Chief Streicher in his individual capacity, he would be dismissed as a matter of law. The complaint does not allege that Chief Streicher was ever at Perkins Lounge, nor does it allege that he was directly involved or that he encouraged the incident. Absent these allegations, there is no basis for a claim against Chief Streicher in his individual capacity. *Thompson v. City of Norton*, No. 94-3246, 1995 U.S. App. LEXIS 17762 at *6-7 (6th Cir. July 14, 1995) (*citing Bellamy v. Bradley*, 729 F.2d 416,

421 (6th Cir.)), *cert. denied*, 469 U.S. 845 (1984).

## IV. CONCLUSION

Accordingly, based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss (Doc. 7), and this case is **CLOSED**.


Date: August 31, 2009                             s/ Timothy S. Black
                                                  Timothy S. Black
                                                  United States Magistrate Judge